UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES JACKSON, *et al.*,

        Plaintiffs,

vs.

DANIEL H. HEYNS, *et al.*,

        Defendants.

_____/

Case No. 1:13-cv-636

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights case brought by three *pro se* prisoner plaintiffs, James Jackson, Kyle Richards, and Sylvester Hill.[1] Plaintiffs' claims involve a variety of hygiene matters and environmental conditions at their cells located at the Bellamy Creek Correctional Facility (IBC) (e.g., exposure to chemical agents, flooded toilets, toilets and vents that "have never been cleaned," and "filthy air and mold"). *See* Report and Recommendation at pp. 6-7 (docket no. 49). This matter is now before the Court on a motion for summary judgment filed by the six defendants, Bennickson, Bonn (sometimes referred to as "Bond"), Kowatch (sometimes referred to as "Cowash"), Ferguson, Marsh and Wise (docket no. 55).

    **I.**    **Plaintiffs' complaint**

The Court previously summarized plaintiffs' claims in the present action as follows:

> Plaintiffs James Jackson, Kyle B. Richards, and Sylvester Hill are incarcerated with the Michigan Department of Corrections (MDOC). At the time they filed their complaint, Plaintiffs all were housed at the Bellamy Creek Correctional Facility (IBC).

---

[1] A fourth plaintiff, Tyler Johnson, was dismissed for failing to pay the filing fee. *See* Order (docket no. 22).

\*     \*     \*

>   Plaintiffs allege that they and all similarly situated mentally ill prisoners housed in segregation at IBC are being subjected to conditions that violate the Eighth Amendment and state law prohibiting abuse of vulnerable persons.

Opinion at p. 2 (Nov. 13, 2013) (footnote omitted) (docket no. 24).

While plaintiffs raised six claims in their complaint, only their third and fourth claims remain:

>   Third, Plaintiff Jackson asserts that he has asthma and has been in segregation for approximately one year. During that time, he has been exposed to chemical agents, when those agents are used on other prisoners during a cell extraction. Plaintiff Jackson alleges that he has complained to Defendants Wise, Ferguson and Bennickson, as well as Captain Makara. He also contends that Defendants Hadden, Mote, Trieweller and McKee are responsible as supervisors for failing to take the proper precaution of moving medically listed inmates who have asthma or bronchitis out of the hazardous area when chemicals are deployed. Plaintiff asserts that "many [prisoners] ha[ve] passed out or had asthma attacks and seizures." (Compl., docket #1, Page ID [## 4-5].) According to Plaintiff Jackson, officers at Oaks Correctional Facility routinely take all prisoners who use inhalers outside, before using chemical sprays.
>
>   Fourth, Plaintiffs complain about a variety of hygiene matters. Plaintiff Jackson asserts that he has been in segregation Unit 1 for one year, and during that time, the plumbing closets to the cells' toilets and the vents have never been cleaned. In addition, the space under the bunks are blocked by steel grates, preventing prisoners from cleaning under the bunks. Further, the toilets have flooded more than once, and the water stagnates under the bunks. As a result, filthy air and mold are being circulated, causing all Plaintiffs to experience breathing problems and allergic reactions. . .

\*     \*     \*

>   Plaintiffs' remaining claims involve two sets of allegations: (1) that Defendants Wise, Ferguson and Bennickson repeatedly failed to move them out of their cells before they used chemical sprays on other segregation prisoners, thereby causing Plaintiffs to experience respiratory problems; and (2) that Defendants Bond, Marsh and Cowash ignored their requests to clean the mold from under their bunks and in the ventilation system, thereby causing them to suffer respiratory problems, nausea and fatigue. Upon initial review, the Court concludes that Plaintiffs' allegations are sufficient to warrant service of the complaint.

*Id.* at pp. 3-4, 14. Plaintiffs' complaint asks for compensatory and punitive damages of $900,000.00 against the six remaining defendants.

### II. Defendants' Motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is

not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Attempted verification of complaint

As an initial matter, plaintiffs attempted to file a "verified complaint" as evidenced by the "verification". *See* Compl. at p. ID# 9. Prisoner plaintiffs sometimes employ this procedure in an apparent attempt to avoid summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment). Here, the "verification" is not signed by the three plaintiffs. Rather, at the end of the verification are two unintelligible scribbles which appear to signature of plaintiff Jackson, the drafter of the complaint. *See* Compl. at p. ID# 9; Opinion (docket no. 24 at p. ID# 164). Assuming that Jackson signed the verification, the other plaintiffs did not join in the pleading. For that reason alone, this is not a "verified" complaint signed by all plaintiffs.[2]

Furthermore, the verification itself does not comply with the requirement of 28 U.S.C. § 1746 that a person seeking to make an unsworn declaration must state "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." Here, the verification is diluted, stating "I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to the matter [sic] alleged on information and belief, and as to those, I believe them to be true. I certify under the

---

[2] Since neither Richards nor Hill signed the complaint, it is unclear on what basis they appear as plaintiffs in this action.

4

penalty of perjury that the foregoing is true and correct." Compl. at p. ID# 9. The complaint consists of an eight-page handwritten narrative which is not divided into numbered paragraphs or counts. The verification is meaningless because plaintiffs did not differentiate between matters alleged as true and matters alleged on information and belief. Accordingly, plaintiff's complaint will not be construed as a "verified complaint" for purposes of defendants' summary judgment motion.

### C.  Eighth Amendment claims

The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). However,"[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of

mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

        **1.**     **Use of chemical agents**

Defendants seek to construe the "chemical agents" claim as brought by plaintiff Jackson, because he is the only plaintiff to explicitly allege injuries due to chemical agents, i.e., that the agents exacerbated his asthma. *See Richmond v. Settles*, 450 Fed.Appx. 448, 453(6th Cir. 2011) ("42 U.S.C. § 1997e(e) requires that a prisoner demonstrate actual physical injury to recover for violations of his Eighth Amendment rights"). The Court notes that plaintiff Richards submitted a "declaration" along with the complaint, in which he claims to have coughed up blood, experienced nausea and vomited "as a result of 'unsanitary' and unethical conditions." Richards Statement (docket no. 3). While the Court previously construed the complaint as brought by all plaintiffs, on closer review, it appears that plaintiff Hill made no allegations of injury related to the chemical agents. Accordingly, the Court views this claim as brought by plaintiffs Jackson and Richards.

The complaint does not set forth any date when plaintiffs were subjected to chemical agents other than a statement that the events occurred during the year prior to the date Jackson signed the complaint, i.e., June 10, 2012 through June 10, 2013.  *See* Compl. at pp. ID## 4-5, 8.  There are "clues" in the file, such as a Step II grievance appeal filed by plaintiff Jackson, which may refer to a gassing which occurred on September 24, 2012 and another gassing which may have occurred on December 24, 2012.  *See* Step II Appeal (docket no. 1-1 at p. ID#19).  Plaintiffs' allegations regarding the "chemical agents" claim fail to allege basic elements such as the specific time and place of the alleged occurrences.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the - defendant - unlawfully - harmed - me accusation") (internal quotation marks omitted).  The most that can be gleaned from the complaint is that prisoners were gassed near defendants Jackson and Richards during the year prior to the date Jackson signed the complaint.  *See* Compl. at pp. ID## 4-5, 8.

In their affidavits in support of the motion for summary judgment, defendants Lt. Ferguson and Capt. Wise stated that "all precautions are taken during the application of chemical agents" and that "a Registered Nurse is on site in the housing unit for all cell extractions."  Ferguson Aff. at ¶ 3 (docket no. 56-2); Wise Aff. at ¶ 3 (docket no. 56-3).  Ferguson stated that he "had no knowledge that Plaintiff Jackson was having issues with chemical agents that were used in other cells" or "that the chemical agent was affecting Plaintiff Jackson's asthma."  Ferguson Aff. at ¶ 3.  Similarly, Wise stated that he "had no knowledge of prisoner Jackson having asthma prior to the incident."  Wise Aff. at ¶ 3.

For his part, defendant Lt. Bennickson provides more information, but does not identify the date when an "incident" occurred involving Jackson:

> Plaintiff Jackson alleges that he has asthma and that I failed to remove him from his cell when chemical agents were administered into other prisoners' cells. I was not aware Prisoner Jackson has asthma prior to or after the incident. A Registered Nurse is in the housing unit when [sic] chemical agent is administered to evaluate prisoners medical concerns prior to and after the use of [sic] chemical agent being administered. The segregation housing unit is equipped with an air handler system which removes the chemical agent from the housing unit after chemical agent is dispersed. After chemical agent is dispersed into a cell, Officers and Supervisors make rounds in the unit to evaluate Prisoners, address and relay any medical concerns to the Registered Nurse. I was not made aware by Prisoner Jackson, unit staff or the Registered Nurse in the unit that Prisoner Jackson was having any medical issues. I do remember prisoner Jackson yelling obscenities out of his cell door to staff during the incident.

Bennickson Aff. at ¶ 4 (docket no. 56-4).

Defendants' affidavits demonstrate they lacked the state of mind necessary to establish the subjective component of an Eighth Amendment claim. There is no evidence that defendants acted with deliberate indifference to plaintiffs' health or safety. Defendants relied on a registered nurse to evaluate the medical condition of prisoners and none of them knew that plaintiff Jackson a medical issue related to the use of chemical agents. Plaintiffs have not rebutted defendants' affidavits. Viewing the record in the light most favorable to the non-moving parties (plaintiffs), the Court concludes that there is no genuine issue of material fact with respect to plaintiffs' claims that defendants' alleged use of chemical agents violated their Eighth Amendment rights. Accordingly, defendants motion for summary judgment should be granted as to the claim pertaining to chemical agents.

**2.    Mold**

Plaintiffs' allegations regarding the mold are more illuminating. Plaintiffs rely heavily on plaintiff Hill's allegation that he complained on February 27, 2013, about mold being in his cell. Compl. at p. ID# 7. Plaintiff Hill subsequently had symptoms of dizziness, throwing up and diarrhea. *Id.* Plaintiff Hill also complained about symptoms in a healthcare kite on March 27, 2013. *Id.* In a separate "declaration", plaintiff Richards stated that vents and cell surfaces are not properly cleaned, with mold and mildew buildup "causing prisoners to get sick." Richards Decl. (docket no. 3 at p. ID# 61). Richards attributes symptoms (coughing up blood, nausea and vomiting) to the unsanitary conditions. *Id.* Richards' declaration, however, is not a declaration which meets the requirements of 28 U.S.C. § 1746.[3] In the complaint, plaintiffs alleged that the circulation of dirty air and mold caused them breathing problems and allergic reactions. Compl. at pp. ID## 5-6.

While the Court found that there were claims against defendants Lori Bonn, Andrew Kowatch and Robert Marsh, the only plaintiff who alleged a claim against these three defendants was Hill, who alleged: that on March 2, 2013, he sent a kite to Assistant Resident Unit Supervisor (ARUS) Bonn regarding mold in his cell; that a week later he approached Corrections Officer (CO) Kowatch with the issue; and that in the last week of March CO Marsh stated that he was not moving plaintiff Hill, even though Hill was having symptoms such as dizziness, throwing up and diarrhea; and that he filed a grievance against Bonn and Kowatch at an unidentified time (presumably in 2013). Compl. at p. ID# 7. Neither plaintiff Jackson nor plaintiff Richards alleged any wrongdoing against defendants Bonn, Kowatch or Marsh.

---

[3] In his declaration, Richards states, "I, Kyle Richards, swear the foregoing statement is true." Richards Decl. (docket no. 3 at p. ID# 61). The declaration does not include a certification under penalty perjury as required under 28 U.S.C. § 1746.

9

Each of these defendants submitted affidavits in support of the motion for summary judgment. Defendant ARUS Bonn stated that she was at IBC at all times relevant to this lawsuit. Bonn Aff. at ¶ 1 (docket no. 56-5). Bonn stated that she "had no recollection of a kite being received by [sic] plaintiff Hill on or about 3/2/2013" nor did she respond to a grievance written in 2013 "for subjecting an inmate to mold." *Id.* at ¶¶ 3-4. Defendant CO Kowatch stated that he was employed at IBC at all times relevant to this lawsuit, and that he "heard no complaints of prisoners in the housing unit suffering from mold." Kowatch Aff. at ¶¶ 1- 3 (docket no. 56-6). Finally, CO Marsh stated that he was employed at IBC at all times relevant to this lawsuit, that he "was not aware of mold being a problem in any cell" and that he did not recall "any prisoner making any complaints to him about mold." Marsh Aff. at ¶¶ 1, 4-5 (docket no. 56-7).

Defendants' affidavits demonstrate they lacked the state of mind necessary to establish the subjective component of an Eighth Amendment claim. There is no evidence that defendants acted with deliberate indifference to plaintiffs' health or safety. Defendant Bonn had no knowledge of plaintiff Hill's complaints. Defendants Kowatch and Marsh had no knowledge of any prisoner suffering from mold or having a mold problem. Plaintiffs have not rebutted defendants' affidavits. Accordingly, defendants' motion for summary judgment should be granted with respect to the mold claims.

### III.  Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 55) be **GRANTED** and that this action be **TERMINATED**.

Dated:  March 27, 2015 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).